UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:07CV-175-R

INVESCO INSTITUTIONAL (N.A.), INC.                                    PLAINTIFF

v.

STEPHEN M. JOHNSON, et al.                                           DEFENDANTS


### MEMORANDUM OPINION

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order (Docket #50).  Defendants filed a response (Docket #56) to which Plaintiff replied (Docket #60). A hearing on the matter was held on May 6, 2007.  This matter is now ripe for adjudication.  For the reasons that follow Plaintiff's Motion for Temporary Restraining Order is GRANTED.

### BACKGROUND

In the early 1990's, Plaintiff recruited Defendants Stephen M. Jonhson, James F. Guenther, Kenneth R. Bowling, and Randy G. Paas to work in its Louisville, Kentucky operation as part of INVESECO's Fixed Income/Stable Value Division.  During their employment, each Defendant rose to the level of Global Partner, a term used throughout the AMVESCAP Group, the ultimate corporate parent of INVESCO, to refer to the most senior group of officers and employees.  In January of 2001, each Defendant executed a Global Partner Agreement ("GPA"), governing the terms and conditions of their employment.

Section 3.A of the GPA contains a notice provision that requires the Global Partners to provide INVESCO with twelve month's written notice of the Partner's intention to terminate his

employment relationship with INVESCO (and vice versa).[1]  Employment would continue for the entire notice period.  If the termination was for cause, as defined under Section 3.C of the GPA, no notice period was required.  Pursuant to Section 3.C of the GPA, a Global Partner may terminate their employment immediately if INVESCO, after written notice, has engaged in any continuing violation of the GPA and has not cured the violation within a reasonable time.

Deutsche Investment Management Americas, Inc., an INVESCO competitor, initiated an effort to hire away Defendants as well as other key members of INVESCO's Worldwide Fixed Income ("WFI") group in Louisville.  INVESCO management learned that the core of the WFI group was about to defect on March 23, 2007.  On March 26, 2007, the Defendants orally informed Martin Flanagan, Chief Executive Officer of AMVESCAP PLC, that they were resigning from INVESCO to join Deutsche.  The Defendants subsequently tendered written notice of termination as called for under the GPA.

On March 27, 2007, Defendant Paas was terminated for cause.  Defendants Johnson, Guenther, and Bowling ("Employed Defendants") were placed on leave of absence with pay for two weeks.  That leave was extended at the end of the two week period pending further uncovering of the facts and deliberation.  INVESCO indicates that the Employed Defendants will be paid their regular salary and receive their regular benefits while on leave.  INVESCO intends to provide the Employed Defendants a bonus for 2007 consistent with what they earned in 2006, assuming that they remain as employees of INVESCO through the applicable payment date of February 28, 2007,

---

[1]  A note to Section 3.A of the GPA states: "INVESCO is willing to agree to a minimum four month notice period, but will accept up to twelve months as a reasonable notice period.  Please fill in and initial the notice period that you desire.  If you do not designate a number of months in the blank or if you designate a number less than four months, you are agreeing to the default notice period of four months."   Each Defendant chose a notice period of twelve months.

in accordance with INVESCO's standard policy with respect to the payment of annual bonuses.[2] Stock options and restricted stock awards that have been made to the Employed Defendants will continue to vest so long as their employment continues through the relevant vesting dates, in accordance with and subject to the terms of the applicable plans.

The complaint in the instant action was filed on March 27, 2007 against Defendant Paas. The complaint was amended on March 28, 2007 to include all Defendants. The amended complaint contains four counts: breach of contract, trade secret violation, inevitable disclosure, breach of duty, unfair competition, conspiracy, and injunctive relief.

By letter dated April 17, 2007, counsel for the Employed Defendants notified counsel for INVESCO that the treatment of the Employed Defendants was in clear contravention of the terms of the GPA. Specifically, defense counsel stated:

> [P]lease consider this letter to be notice of a declaration of Invesco's material breach of the Global Partner Agreements of Messrs. Johnson, Guenther and Bowling under Paragraph 3.C. of their respective agreements. Of course, Invesco was on notice of the material breach prior to this time through individual communications from my clients, as well as their suit filed on March 28.

> As a result of Invesco's conduct in placing my clients upon involuntary leave of absence, denying them access to company premises, computers and other resources, denying them access to clients, subordinates, superiors, and other personnel of Invesco, and rendering them incapable of carrying out their job responsibilities, Invesco is engaged in continuing violations of the agreements. Invesco is hereby placed upon notice and demand to cure the violations post haste and, in any event, no later than April 30, 2007.

On April 20, 2007, INVESCO filed a motion for preliminary injunction seeking, in part, to

---

[2] The Employed Defendants receive most of their cash compensation by way of a bonus paid after the end of the year. For example, in 2006, Defendant Johnson received a regular salary of approximately $300,000 during the year and a bonus of approximately $700,000 paid in February 2007 based on 2006 performance.

require the Employed Defendants to honor the twelve month notice of termination provision set forth in the GPA and refrain from competitive activity while serving out the notice period. That same day, this Court entered an order scheduling a hearing on INVESCO's motion for preliminary injunction on June 7, 2007.

By letter dated April 27, 2007, counsel for INVESCO notified counsel for the Employed Defendants that the Employed Defendants would be returned to active employment on May 21, 2007. The letter also directed the Employed Defendants to be in INVESCO's offices in Atlanta, on INVESCO's expense, on April 30, 2007, to discuss matters pertaining to their impending return to work. The Employed Defendants did not appear in INVESCO's offices on that date.

The Employed Defendants notified INVESCO by letter, that they had terminated their GPAs effective April 30, 2007.

INVESCO filed the instant motion for temporary restraining order on May 1, 2007. INVESCO asks this Court to restrain the Employed Defendants from commencing employment with Deutsche until this Court has issued a ruling on the pending motion for preliminary injunction following the scheduled hearing on June 7, 2007.

## STANDARD

In determining whether to issue a temporary restraining order, the court must consider: "(1) whether the movant has a 'strong' likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction." *Summit County Democratic Cent. & Executive Comm. v. Blackwell*, 388 F.3d 547, 550-51 (6th Cir. 2004) (quoting *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)).

4

"These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).

## ANALYSIS

## I.  LIKELIHOOD OF SUCCESS ON THE MERITS

### A.  Breach

The Employed Defendants argue that INVESCO is unlikely to succeed on the merits of its breach of contract claim because INVESCO breached the GPA when it placed the Employed Defendants on involuntary indefinite leaves of absence.

The Employed Defendants rely primarily on a case from the Colorado Court of Appeals. The issue before the court in *Montemayor v. Jacor Communications, Inc.*, was whether the plaintiff employee had established a *prima facie* case of breach of contract that supported the jury's verdict in her favor. 64 P.3d 916, 920 (Colo. Ct. App. 2003). Plaintiff, an employee of defendant company, had entered into an Executive Employment and Non Competition Agreement that provided that she was to act as a senior executive officer of defendant for a period of two years or until she was discharged for cause or disability, or until she terminated the agreement for "good reason" which included leaving within six months of "any material reduction in the scope of [her] duties and responsibilities for the Company from those duties undertaken by [her] for the Company on the date of this Agreement." *Id.* at 919. Pursuant to the agreement, plaintiff was to be consulted on all "major strategic decisions" concerning the company. *Id.* Following her complaint of harassing behavior from a co-worker, the company's general manager informed plaintiff that she was no longer president of the company, that management had eliminated her authority to make any

5

decisions, that no employees would report to or work for her, and that her job duties were limited to acting as a resource and consultant to sales staff.  *Id.* at 919-20.  Plaintiff then terminated the agreement citing "good reason," and filed an action claiming interference with contract, breach of contract, conspiracy, and a violation of the Colorado Wage Claim Act.  *Id.* at 920.

The Colorado Court of Appeals found that "[w]hen the anticipated nonmonetary benefits to the employee are a material part of the advantage to be received from employment, an employment contract has an implied promise to provide work."  *Id.* at 920-21.  The court stated that these benefits "may be among other things, the acquisition of skill or reputation by the employee, or the opportunity to earn performance bonuses."  *Id.*  The court also determined that "plaintiff's demotion from president to sales consultant, which stripped her of all decision-making and managerial responsibilities, and which the parties did not contemplate when they agreed that she would act as an executive, constituted a breach of contract."  *Id.* at 921.

INVESCO argues that *Montemayor* is inapplicable here as there is no Kentucky authority to support implying any term into the contract at bar.  "An implied covenant is one which may reasonably be inferred from the whole agreement and circumstances attending its execution."  *Anderson v. Britt*, 375 S.W.2d 258, 260 (Ky. Ct. App. 1963).  The courts have refused to prescribe a certain form for the construction of an implied covenant, instead looking to the true intentions of the parties.  *Id.*  The law does not favor implied covenants, but this general rule does not mean that covenants may never be implied from written agreements.  *Lagrew v. Hooks-SupeRx, Inc.*, 905 F. Supp. 401, 405 (E.D. Ky. 1995).  "The courts will declare implied covenants to exist only when there is a satisfactory basis in the express contract of the parties which makes it necessary to imply certain duties and obligations in order to effect the purposes of the parties to the contract made."

*Anderson*, 375 S.W.2d at 261.

The GPA states that the agreement is for employment as a Global Partner.  The term Global Partner is defined in the GPA as a term "used throughout the AMVESCAP Group to refer to the most senior group of officers and employees."  Under the Section entitled "Duties of Employment" the GPA states, "You agree to perform the duties assigned to you by the Company as more specifically stated in an attachment to this letter.  The attachment may be modified in the future if you and the Company agree in writing."  Each GPA contains an attachment which includes a statement of responsibilities.  Defendant Johnson's statement of responsibilities reads "Fixed Income Chief Investment Dealer," Defendant Guenther's reads "Oversight and direction of fixed income credit research team/process," and Defendant Bowling's reads "Development of product strategy."

This Court finds that it could reasonably be inferred from the GPA and the circumstances attending its execution that the GPA contained an implied covenant that INVESCO would provide the Employed Defendants with work of a senior executive or with the duties of a Global Partner. A large part of the Employed Defendant's yearly salary consists of their performance based bonus. Section 2 of the GPA states that in addition to the annual salary, the Global Partner will "receive certain bonuses and stock awards as approved from time to time by the Company."  Although INVESCO has stated that it will provide the Employed Defendants with a bonus for 2007 consistent with what they earned in 2006, assuming that they remain employees of INVESCO through February 28, 2007, this guarantee was not in effect at the time the parties entered into the GPA.  At the time the parties entered the GPA, the bonus was based on the employee's performance on work supplied by INVESCO.  Although it is a close question, the Court assumes that for the purposes of this motion at this time that having failed to provide the Employed Defendants with work,

7

INVESCO breached the GPA. *See Montemayor*, 64 P.3d at 920-21.  This conclusion is not affected by the fact that the Employed Defendants had given their notice of termination to INVESCO prior to being placed on leave.   Pursuant to Section 3.C of the GPA, during the notice period prior to termination, the Global Partner's employment was to continue for the entire notice period.   There is no indication in the GPA that this employment would differ in any material way from the employment prior to the notice of termination.

This Court's conclusion is bolstered by the result in a Tennessee Supreme Court case *Guiliano v. Cleo, Inc.*  The plaintiff in *Guiliano* had been employed as a director of marketing at defendant company for one year when he entered into a written employment contract with the company.  995 S.W.2d 88, 91-92 (Tenn. 1999).  Following a management change at the company, plaintiff's employment responsibilities were diminished.  *Id.* at 92-93.  Plaintiff received a letter from the company's President and Chief Executive Officer stating that he was relieved of his duties as Vice President of Marketing and shall be responsible for such assignments as may be given to him by the company's President until the expiration of his employment contract and would remain at his current salary.  *Id.* at 93.  The letter stated that plaintiff would be based out of his home for all future assignments.  *Id.*  Subsequently, plaintiff received letters from the company indicating that he was no longer authorized to use company credit cards and that the company would no longer answer a telephone line for him.  *Id.*  All telephone calls for the plaintiff were to be screened for personal or business, with the personal calls being directed to plaintiff's home.  *Id.*  Plaintiff stayed at his home for three months without receiving a work assignment from the company.  *Id.*  In the meantime, a co-worker moved into plaintiff's old office and assumed the marketing responsibilities previously handled by the Plaintiff.  *Id.*  The plaintiff subsequently filed suit against the company, claiming that

the company had constructively terminated his employment without cause.  *Id.*

Addressing the issue as strictly one of breach of contract, the Tennessee Supreme Court held that the company had terminated plaintiff's employment without cause, thereby breaching the contract.  *Id.* at 94.  The court held that although the contract enabled the company to change plaintiff's job functions and responsibilities during the course of the contract, this did not include the right to remove all of plaintiff's duties.  *Id.* at 95.  In so holding, the court specifically rejected the company's contention that it had fulfilled its contractual obligation to plaintiff by keeping him on the company payroll at his then current salary although it had altered and effectively ended his work responsibilities.  *Id.* at 95-96.

INVESCO cites to a decision by the District Court of the Southern District of New York in support of its position.  In *Natsource LLC v. Paribello*, Paribello, an energy commodities broker was employed by Natsource pursuant to an employment agreement which provided, among either things, that either party could terminate the contract for any reason, but only after providing thirty days written notice of termination.  151 F. Supp. 2d 465, 466 (S.D.N.Y 2001).  After Natsource learned that Paribello intended to resign and accept a position with a Natsource competitor and subsequently confronted him with the information, Portibello resigned.  *Id.* at 467.  Portibello reported to work at Natsource the day after his resignation where he was told to take the day off and that he would be contacted regarding his employment status.  *Id.*  After Paribello's attorney sent the company a letter purporting to provide the thirty days written notice required by the employment agreement, Natsource sent Paribello a letter instructing him not to report to Natsource's premises.  *Id.* at 468.  Paribellos' attorney responded with a letter stating that "by directing Paribello to cease any brokering activity and leave the trading floor that morning, Natsource terminated Paribello without

9

notice or cause, in violation of the employment agreement." *Id.* After issuing a temporary restraining order enjoining Paribello from violating the restrictive covenants in his employment agreement, the court considered whether to grant a preliminary injunction enforcing the covenants. *Id.* Paribello argued that Natsource had materially breached the agreement by preventing him from working at Natsource after he gave his notice. *Id.* at 476-77. The contractual provision at issue stated: "Employee shall be employed to broker over the counter energy-related and environment-related instruments, with such duties and powers as shall be reasonably determined, from time to time, by Employer." *Id.* at 477. The court interpreted this provision as providing Natsource the sole discretion to assign Paribello his specific duties as it reasonably determined appropriate, although Paribellow was hired for the purpose of providing brokering services. *Id.* The court found that Natsource reasonably determined that Paribello should spend his thirty day notice period on paid leave rather than in the office on the trading floor, given the circumstances surrounding Paribello's termination. *Id.*

However, in the instant case INVESCO does not retain the discretion to assign the Employed Defendants their specific duties. The GPA states in pertinent part: "You agree to perform the duties assigned to you by the Company as more specifically stated in an attachment to this letter. The attachment may be modified in the future if you and the Company agree in writing." Each of the Employed Defendant's GPA contains an attachment stating in some specificity a statement of responsibilities. Thus, INVESCO does not have sole discretion to assign the Employed Defendants their specific duties, rather any change in assignment must be agreed upon by both INVESCO and

10

the Employed Defendant.[3]  Likewise at the stage the Court is uncertain as to what range of duties would fit within the relevant job classification of Global Partner status.

Therefore, for purposes of this motion with leave to review upon further discovery, the Court finds that INVESCO breached the GPA when it placed the Employed Defendants on paid administrative leave.

**B.    Cure**

Having assumed that INVESCO breached the GPA by placing the Employed Defendants on administrative leave, the Court must now determine whether INVESCO cured this breach pursuant to the terms of the GPA.  Section 3.C of the GPA provides that a Global Partner may terminate their employment effective immediately if the Company, after written notice, has engaged in any continuing violation of the GPA and has not cured such violation within a reasonable period of time. There is no indication in the GPA as to what constitutes a reasonable period of time.

INVESCO placed the Employed Defendants on administrative leave on March 27, 2007. The Employed Defendants notified INVESCO by letter dated April 17, 2007, that the treatment of the Employed Defendants was in clear contravention of the terms of the GPA.  On April 27, 2007, INVESCO indicated that it would return the Employed Defendants to active employment on May 21, 2007.  This would result in a period of administrative leave following the written notice of breach of thirty-four days.

The Employed Defendants argue that this attempt to cure is inadequate, citing the length of

---

[3]  INVESCO argues that the statements of responsibility contained in the attachments to the GPAs are broad, allowing them a great deal of discretion on which duties within those categories to assign to the Employed Defendants.  Even assuming that this statement is correct, this does not give INVESCO the discretion to withdraw all duties of employment.

the leave of absence and the confusion concerning the alteration of the Employed Defendants' job duties.

Given the circumstances of the planned defection, this Court finds that INVESCO has not yet been given an opportunity to cure.  Until the Employed Defendants are given the terms of their return to active employment, this Court will be unable to determine whether the cure is adequate. If the cure is adequate, INVESCO will likely succeed on the merits of their breach of contract claim as Plaintiff's must serve their twelve month period of notice with INVESCO.  Therefore, taking into consideration the fact that INVESCO is paying the Employed Defendants their regular salary and benefits and maintaining their eligibility for bonuses, stock options, and restricted stock awards, this Court will require INVESCO, to provide the Employed Defendants with the terms of their return to active employment by no later than May 21, 2007.  Any issues as to the adequacy of the cure will be addressed by the Court at the hearing on the preliminary injunction on June 7, 2007.  The Court does not require the Employed Defendants to meet with INVESCO prior to INVESCO's provision of the terms of the Employed Defendant's return to active employment.

## II.    INJURY

INVESCO asserts that it will suffer irreparable harm if the Employed Defendants are not temporarily restrained from going to work for Deutsche prior to the June 7, 2007 hearing and the Court's ruling on the pending motion for preliminary injunction.  INVESCO claims that it has lost business since this action began and it is reasonable to assume that further business would be lost if the Employed Defendants were permitted to begin working for Deutsche prior to a ruling on the pending preliminary injunction motion.   Additionally, INVESCO claims that it will suffer irreparable harm to its internal operations should the Employed Defendants be permitted to begin

12

work for Deutsche, as it is possible that their departure could influence other INVESCO WFI employees to consider moving to Deutsche.  INVESCO also claims that the Employed Defendants departure to Deutsche at this time would result in irreparable harm to INVESCO's competitive position with respect to Deutsche as there exists a risk that INVESCO's trade secrets and confidential information would be disclose to and misused by Deutsche.

When economic loss can be calculated and compensated by monetary damages, there is generally no claim for irreparable injury.  *See Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992.  "However, an injury is not fully compensable if the nature of the plaintiff's loss would make damages difficult to calculate."  *Id.*  "The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." Similarly, the loss of fair competition that results from the breach of a non-competition covenant is likely to irreparably harm an employer."  *Id.* at 512 (citations omitted); *see also Merrill Lynch, Pierce, Fenner & Smith v. Grall*, 836 F. Supp. 428, 434 (W.D. Mich. 1993) (finding that plaintiff had demonstrated irreparable harm where plaintiff showed that it would lose good will; client trust, confidence, and confidentiality; and competitive advantage).

The Employed Defendants argue that INVESCO can not show that it will suffer irreparable harm as Defendant Paas has been working for Deutsche since his employment was terminated in late March 2007.  The Employed Defendants state that if Paas has been revealing confidential information as INVESCO claims, then any harm to INVESCO has already been done and that if INVESCO is entitled to a remedy, if any, it is to damages not injunctive relief.  The Court does not find this argument convincing.  The departure of the Employed Defendants may result in additional business loss and damage to internal operations.  Additionally INVESCO has moved for preliminary

13

injunctive relief against Paas and is currently engaged in expedited discovery.

The Court finds that absent the entry of a temporary restraining order, INVESCO will suffer irreparable harm.  The Court will be able to further examine the issue following more discovery.

## III.   HARM TO OTHERS

The Employed Defendants argue that they will suffer substantial hardship if the Court were to grant INVESCO's motion for temporary restraining order as the Employed Defendants would remain bound by the INVESCO GPA but would be prevented from carrying out the duties and responsibilities contemplated in the GPA.

INVESCO has stated that it will return the Employed Defendants to active employment on May 21, 2007.  However, at this time, it is unclear what the terms of that employment will be.  Until these terms are made clear, this Court will be unable to determine if the Employed Defendants will be prevented from carrying out the duties and responsibilities contemplated in the GPA.  Taking into consideration the fact that INVESCO intends to pay the Employed Defendants their current salaries and benefits and that the Employed Defendants will maintain eligibility for bonuses, stock options, and restricted stock awards, this Court does not find that the Employed Defendants will suffer substantial hardship if a temporary restraining order is entered.

## IV.   PUBLIC INTEREST

The Employed Defendants argue that the public interest can not lie with preventing the Employed Defendants from actively engaging in gainful employment to support their families.  However, this Court finds that there is no risk to the Employed Defendants' families as INVESCO has already guaranteed to pay the Employed Defendants' full salaries, bonuses, benefits, and any stock options to which they are entitled.  Moreover, INVESCO states it has made plans to bring the

14

Employed Defendants back to active duty in compliance with the contract.

The Employed Defendants also argue that the public interest is not served by allowing INVESCO to selectively enforce provisions of its contracts with its employees. The Court, however, finds that INVESCO has not been given an opportunity to comply with its contractual obligation to cure any breach of the GPA, a contractual provision on which the parties agreed. The Court, in contrast to the Employed Defendant's suggestion, is not allowing INVESCO to selectively enforce provisions of its contracts with employees.

## CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Temporary Restraining Order is GRANTED. INVESCO will continue to pay the Employed Defendants their current salaries and benefits and maintain their eligibility for bonuses and stock options and restricted stock awards until the order on the motion for preliminary injunction is issued, a hearing on which is scheduled for June 7, 2007. INVESCO will provide the Employed Defendants with the terms of their reinstatement no later than May 21, 2007. Any issues as to the adequacy of the terms of reinstatement will be heard by the Court at the June 7, 2007 hearing.

An appropriate order shall issue.