UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:07-CV-0175-R

INVESCO INSTITUTIONAL (N.A.), INC.                          PLAINTIFF

v.

RANDY G. PAAS, et al.                                       DEFENDANTS

MEMORANDUM OPINION

This matter comes before the Court on Defendants Randy G. Pass, Stephen M. Johnson,
James F. Guenther and Kenneth R. Bowling's Motion to Dismiss Pursuant to Rules 12(b)(1),
12(b)(7) and 19(b) (Docket #264) and Non-Party DB Advisors' Motion Pursuant to Fed. R. Civ.
P. 12(b)(7), 19(a)(1)(B) and 24(a) to Intervene, to be Declared an Indispensable Party and to
Dismiss (Docket #270).  Plaintiff filed a joint response (Docket #275), to which Defendants
Pass, Johnson, Guenther and Bowling, and DB Advisors replied (Docket #276 and #277).  This
matter is now ripe for adjudication.  For the reasons that follow, Defendants' Motion is DENIED
and DB Advisors' Motion is GRANTED.

BACKGROUND

Plaintiff INVESCO is a global financial services firm with operations in the Louisville,
Kentucky area.  The Worldwide Fixed Income Group ("WFI") is a group within Plaintiff focused
on the management of fixed income investments.  Defendants are former employees of
Plaintiff's.  This matter arises out of an alleged secret scheme between the Defendants and one of
Plaintiff's competitors, non-party Deutsche Bank Advisors ("DB")[1] to effect a surprise mass

---

[1] According to Defendants, Deutsche Investment Management Americas Incorporated,
referred to in prior court documents as "Deutsche," recently changed names and is now Deutsche

defection of Plaintiff's Louisville-based WFI to DB.

Plaintiff contends, among other allegations, that Defendants have disclosed trade secret and other confidential information to DB about the WFI and Plaintiff's IT systems. Specifically, Plaintiff alleges that Defendants disclosed information about Plaintiff's software known as Q-Tech. Plaintiff states that Q-Tech was developed to implement Plaintiff's distinctive investment process and consists of a suite of software applications that are proprietary to Plaintiff.

In its First Amended Complaint filed March 3, 2007, Plaintiff alleged that Defendants Pass, Johnson, Guenther and Bowling ("GP Defendants") were liable for breach of contract, trade secret violation, inevitable disclosure, breach of duty, unfair competition and conspiracy. Plaintiff outlined the GP Defendants' wrongful acts in seven paragraphs, claiming the following: that the GP Defendants signed an agreement with provisions regarding confidentiality, non-solicitation, and non-pirating; that they received substantial compensation, stock options, and generous benefits for their employment at INVESCO; that they were permitted access to confidential and trade secrets information which included "proprietary software applications, customer lists, customer preferences, investment holdings and amounts, pricing and fee lists, employee compensation, and business strategies and plans of the company"; and that they had been in secret communication with DB regarding leaving INVESCO to work for DB. The complaint also stated that on March 23, 2007, DB "revealed its plan to hire away INVESCO's WFI core personnel," that on March 24 DB's executive leader Kevin Parker sent INVESCO's owner's CEO, Martin Flanagan, an email with a proposed memorandum of understanding that INVESCO would assist in an orderly transition of business to DB, and that on March 25 Parker

---

Bank Advisors.

again emailed Flanagan to remind him that his WFI team would be resigning the following

Monday, which would result in a near total asset loss for INVESCO.

On April 20, 2007, Plaintiff moved for a preliminary injunction prohibiting the GP

Defendants "from (1) working for Deutsche Investment Management Americas, Inc.; (2)

disclosing or using INVESCO's trade secrets and other confidential and proprietary information;

(3) pirating INVESCO employees in violation of their employment agreements; and (4)

soliciting INVESCO's customers." This Court granted Plaintiff's motion in part on June 27,

enjoining GP Defendants, for a limited period of time, from leaving the employ of Plaintiff, from

generally disclosing or using any of INVESCO's trade secret and/or confidential information,

from soliciting or hiring any INVESCO employees, and from soliciting certain business

relationships.

On August 29, 2008, Plaintiff filed a motion for leave to file a Second Amended

Complaint to add additional facts learned during discovery to support its claims, and to add

Austin Mayberry and Richard Robben as defendants. In support of its motion, Plaintiff stated

that it had recently uncovered more information related to Defendants' alleged scheme, as well

as evidence to support Mayberry and Robben's involvement. Plaintiff argued that amendment of

the complaint was proper because the GP Defendants, Mayberry and Robben were all former

employees, were all breaching their duties to Plaintiff, and were all working together to replicate

the investment process and technology systems that are proprietary to Plaintiff.

The GP Defendants opposed amending the complaint and argued that Plaintiff did not

satisfy the requirements set forth by Federal Rules of Civil Procedure 16(b) or 15(a)(2). They

also argued that amendment was not appropriate because it was futile, reasoning that amendment

required DB to be added as a defendant, which would result in dismissal because joining

Deutsche would destroy the Court's subject matter jurisdiction since both Plaintiff and Deutsche

are incorporated under the laws of Delaware.  On October 22, 2008, this Court granted Plaintiff's

motion to file a Second Amended Complaint.

   Plaintiff's Second Amended Complaint does not add any new cause of action, but it does

add forty-four paragraphs of factual allegations, beginning with the statement that:

> This case arises out of a secret scheme between the GP Defendants
> and one of INVESCO's competitors, Deutsche, to effect a surprise
> mass defection of INVESCO's Louisville-based WFI  to Deutsche
> and to enable Deutsche to force INVESCO to transfer its entire
> institutional fixed income business to Deutsche on terms dictated by
> Deutsche and to acquire the investment management process and
> proprietary software tools that give WFI a competitive advantage in
> the marketplace.

These additional allegations outline in much greater detail than the first amended complaint the

alleged actions by Defendants that support Plaintiff's claims for breach of contract, trade secret

violation, inevitable disclosure, breach of duty, unfair competition and conspiracy, and

Plaintiff's request for injunctive relief.  The Second Amended Complaint details Defendants'

employment with INVESCO, INVESCO's development and refinement of its "unique

investment management process" and Q-Tech, Defendants alleged scheme with DB to raid

INVESCO, and Defendants alleged disclosure of trade secrets, confidential and proprietary

information to DB. The Second Amended Complaint states that Robben and Mayberry promptly

began disclosing Plaintiff's trade secrets and proprietary information, including detailed

descriptions of Q-Tech, when they began working for DB.  The Second Amended Complaint

further states that once the GP Defendants began working for DB, they too transferred their

knowledge of Plaintiff's investment process and software systems to DB and participated in the

development of "software tools designed to misappropriate INVESCO's trade secrets." With respect to DB, the Second Amended Complaint states that it "has used the information provided by the Defendants to implement a new investment management process that mirrors INVESCO's unique investment process," is "developing and rolling out a suite of software tools designed to replicate the core functionality of Q-Tech," and "has began using one of these software applications, Alpha Workbench, in late 2007," with plans to "roll it out across the company's entire global fixed income platform."

A few days after filing its motion for leave to amend its complaint, on September 2, 2008, Plaintiff filed a motion for preliminary injunction. In this motion, Plaintiff seeks to prohibit GP Defendants, Mayberry and Robben "from (1) any further development, use or deployment of that certain software program, tool or module known, or previously known, as 'Alpha Workbench' or any other iteration, modification or enhancement of the same; (2) any further development, use or deployment of any software program, tool or module designed to recreate, replicate or mimic the design or functionality of those certain software tools contained within INVESCO's Q-Tech system and known as i) 'Alpha Sources,' ii) 'Product Passport' and iii) 'Portfolio Implementation Tool'; (3) disclosing, implementing or using INVESCO's unique investment process insofar as the same is facilitated and carried out by INVESCO's proprietary Q-Tech system."[2]

Defendants now argue that because Plaintiff seeks relief that necessarily implicates DB, DB is an necessary party under Federal Rule of Civil Procedure 19. Because joinder of DB would destroy the Court's diversity jurisdiction, Defendants further argue that the case should be

---

[2] The hearing on this motion is currently set for November 24, 2008.

dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(7) and 19(b).  Non-party

DB also argues that it is an indispensable party, and moves to intervene pursuant to Federal Rule

of Civil Procedure 24(a) and dismiss the case pursuant to Federal Rule of Civil Procedure

12(b)(7) and 19(b).

## A.    DB'S MOTION TO INTERVENE

STANDARD

Federal Rule of Civil Procedure 24(a) provides that a non-party may intervene as "of

right" when, "[o]n timely motion," the movant "claims an interest relating to the property or

transaction that is the subject of the action, and is so situated that disposing of the action may as

a practical matter impair or impede the movant's ability to protect its interest, unless existing

parties adequately represent that interest."  In other words, Rule 24 allows an absentee party to

petition for intervention when it "stands to have its interests harmed."  *Glancy*, 373 F.3d at 670

n.13.  The Sixth Circuit has held that Rule 24 "should be 'broadly construed in favor of potential

intervenors.'"  *Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir.

2007) (quoting *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir.1991)).

"[A] proposed intervenor must establish four factors before being entitled to intervene:

(1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest

in the subject matter of the case; (3) the proposed intervenor's ability to protect their interest

may be impaired in the absence of intervention; and (4) the parties already before the court

cannot adequately protect the proposed intervenor's interest."  *Granholm*, 501 F.3d at 779 (citing

*Grutter v. Bollinger*, 188 F.3d 394, 397-98 (6th Cir. 1999)).  "'The proposed intervenor must

6

prove each of the four factors; failure to meet one of the criteria will require that the motion to intervene be denied.'" *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005) (quoting *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir.1989)).

DISCUSSION

1.      *Timeliness*

The first factor that DB must demonstrate is satisfied is timeliness.  *See Granholm*, 501 F.3d at 779.  Within this timeliness factor, the Sixth Circuit has "identified several factors to be established in determining whether a request for intervention is timely:"

> (1) the point to which the suit has progressed;
> (2) the purpose for which intervention is sought;
> (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case;
> (4) the prejudice to the original parties due to the proposed intervenor's failure, after he or she knew or reasonably should have known of his interest in the case, to apply promptly for intervention; and
> (5) the existence of unusual circumstances militating against or in favor of intervention.

*United States v. Tennessee*, 260 F.3d 587, 592 (6th Cir. 2001) (quoting *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir.1989)).  "The determination of whether a motion to intervene is timely should be evaluated in the context of all relevant circumstances," *id.* (quoting *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)), and "is within the trial court's discretion," *Sales v. Marshall*, 873 F.2d 115, 121 (6th Cir. 1989).

Based on an examination of the following timeliness factors, the Court finds that DB's motion to intervene is timely.

### a.   Stage of Proceedings

A critical factor in determining the propriety of intervention is the steps which occurred "along the litigation continuum" during the period of time between the filing of the complaint and the motion to intervene.  *Stupak-Thrall v. Glickman*, 226 F.3d 467, 475 (6th Cir.2000).  "If the litigation has 'made extensive progress in the district court before the [absentee party] moved to intervene' then this factor weighs against intervention."  *Tennessee*, 260 F.3d at 592 (quoting *Stupak-Thrall*, 226 F.3d at 475).

Plaintiff argues that DB's motion is untimely because of how far the suit has progressed.  Specifically, Plaintiff points to the fact that it has already applied for and been granted a preliminary injunction; that discovery is nearly over and so far has resulted in the production of tens of thousands of documents, dozens of depositions, and an extensive motions practice; and that its expert reports are due November 21.

The original complaint in this matter was filed on March 27, 2007, over nineteen months ago.  Since then, as Plaintiff states, the case has made substantial progress.  The Court has entered one preliminary injunction.  The discovery phase is nearing an end.  Both parties have expended significant resources producing documents, taking and defending depositions, and filing motions.  A hearing on the pending preliminary injunction motion was postponed due to the instant motions and is currently scheduled for November 24, 2008.  Trial is set for July 20, 2009.  Therefore, this factor weighs in favor of Plaintiff.

### b.   Purpose of Intervention

DB argues that its motion to intervene is timely because Plaintiff "drastically shifted the landscape of this litigation and expanded the scope of the relief it was seeking when it moved to

8

amend its complaint and moved for a broad trade secrets injunction." Only then, it argues, were its interests implicated, because up until that point the action was "focused only on the conduct of the defendants prior to joining DB."

Plaintiff's Second Amended Complaint and motion for preliminary injunction do not reflect the extreme fundamental change DB contends they do, but the Court finds that the greatly expanded factual allegations detailing actions of the Defendants after joining DB, the addition of Mayberry and Robben, and the preliminary injunction motion specifically requesting prohibition of software programs currently in use by DB did shift the landscape of the litigation enough to justify DB's decision to intervene at this stage. While DB could have reasonably suspected that the matter necessitated its intervention earlier, neither Plaintiff's first amended complaint nor the first preliminary injunction directly or clearly implicated DB's interests. The Second Amended Complaint, however, made clear that Defendants action while working at DB are central to the case. Also, whereas the initial preliminary injunction motion generally requested that the GP Defendants be enjoined from "disclosing or using INVESCO's trade secrets and other confidential and proprietary information," the pending motion for preliminary injunction specifically names several programs currently in use or development by DB and requests that Defendants be prohibited from further developing or deploying them. Therefore, this factor weighs in favor of DB.

c.    *Length of Time*

"An entity that is aware that its interests may be impaired by the outcome of the litigation is obligated to seek intervention as soon as it is reasonably apparent that it is entitled to intervene." *Tennessee*, 260 F.3d at 594. Here, Plaintiff emphasizes that DB waited eight weeks

after Plaintiff filed its motion for a preliminary injunction to file its motion to intervene.  DB notes that the GP Defendants argued, in their response to Plaintiff's motion to amend, that DB would become an indispensable party if the complaint was amended.  Two days after the Court granted Plaintiff's motion, and explained that the GP Defendants could not argue DB was indispensable under Rule 19(a)(1)(B), DB moved to intervene.

The question then becomes whether DB "knew or reasonably should have known of [its] interest in the case" when Plaintiff filed its motion to amend and motion for preliminary injunction, on August 29 and September 2, 2008, or whether this interest only became reasonably knowable on October 22, 2008, when the Court granted Plaintiff's motion to amend and declined to consider the parties' Rule 19 arguments.  *See Tennessee*, 260 F.3d at 592.

With respect to the Second Amended Complaint, the Court finds that DB reasonably should have known of its interests on October 22, 2008, when Plaintiff's motion was granted and the Complaint was entered onto the docket.  Even if the Court had denied Plaintiff's motion, however, the motion for preliminary injunction would still have been pending.  Plaintiff's requests to prohibit the use and development of specific software systems would not have changed, and the hearing would have still been held.  Plaintiff's memorandum in support of its motion also outlined events that allegedly occurred after Defendants began working at DB.  The motion for preliminary injunction will only be resolved after this hearing.  If DB has an interest in the outcome of the hearing, then it reasonably should have known of its interest in the case on September 2, 2008.  Because it waited eight weeks before filing its motion to intervene, this factor weighs slightly in favor of Plaintiff.

d.      *Prejudice to the Parties*

Plaintiff argues that it would be prejudiced if DB's motion to intervene is granted "because of the significant delay it would have to face in resolving its claims." It argues that this delay would be "particularly unfair" because DB has previously avoided litigating in this Court. The question, however, is not whether Plaintiff would be prejudiced if the Court granted the motion to intervene, but rather whether Plaintiff is prejudiced by DB's failure "to apply promptly for intervention" after September 2, 2008. *See Tennessee*, 260 F.3d at 592.

The Court finds that Plaintiff is not prejudiced by the eight-week delay in DB's filing the current motion to intervene. Eight weeks, while not prompt, is not a significant period of time in light of all the circumstances. Additionally, the delay likely only delayed a ruling by two or three weeks. Therefore, this factor weighs in favor of DB.

e.      *Unusual Circumstances*

Neither Plaintiff nor DB argue that unusual circumstances militate against or in favor of intervention. The Court also does not recognize any unusual circumstances, and so therefore this factor does not weigh in favor of either party.

In sum, in the Court finds that DB's motion to intervene is timely "in the context of all relevant circumstances." *See Tennessee*, 260 F.3d at 592. DB moved to intervene only two days after Plaintiff's complaint was amended and eight weeks after Plaintiff filed its motion for preliminary injunction. While the eight week delay was not prompt, this delay does not prejudice Plaintiff. Additionally, during the delay DB was waiting for the Court to rule on Plaintiff's motion to amend and on GP Defendants' arguments that if the motion was granted DB would become an indispensable party. DB took immediate action after the Court allowed

11

Plaintiff to amend its complaint and explained that the GP Defendants had not properly brought the issue of whether DB was an indispensable party before the Court.

      2.      *Substantial Interest*

The second factor a proposed intervenor must satisfy is whether it "has a substantial legal interest in the subject matter of the case." *Granholm*, 501 F.3d at 779. The Sixth Circuit "has opted for a rather expansive notion of the interest sufficient to invoke intervention of right." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997). A court should conduct a fact-specific "inquiry into the substantiality of the claimed interest" and resolve close cases in favor of recognizing an interest under Rule 24(a)." *Id.* at 1245, 1247.

DB argues that it has an interest in the subject matter of the case because Plaintiff "seeks to enjoin the development and use of DB's Alpha Workbench software and other software tools," and enjoin its employees from performing their work for DB, directly impacting DB. DB also contends that the preliminary injunction creates uncertainty "regarding the use of investment processes defined so vaguely and broadly that they may be used by DB employees in their work for DB's clients." Plaintiff does not address this factor.

The Court finds that DB has a substantial legal interest in the subject matter of the case. The software at issue in the preliminary injunction motion is in use and development at DB. Plaintiff's alleged unique investment process may be being implemented at DB. The Defendants are all employees of DB, and an injunction could possibly effect their job duties. The allegations relate to actions taken by DB. Therefore, DB has satisfied this factor.

      3.      *Impairment*

The third factor a proposed intervenor must satisfy is whether its "ability to protect [its]

interest may be impaired in the absence of intervention." *Granholm*, 501 F.3d at 779. "To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal." *Miller*, 103 F.3d at 1247 (internal citation omitted).

DB argues that without its intervention, Plaintiff's "effort to obtain injunctive relief would create a very significant possibility that DB's ability to protect its right to develop and use its software would be impaired." Because a preliminary injunction may impact DB, its employees, and its business, the Court finds that DB has satisfied the minimal bar for this factor.

### 4.     Inadequate Representation

The fourth and final factor a proposed intervenor must satisfy is whether "the parties already before the court cannot adequately protect the proposed intervenor's interest." *Granholm*, 501 F.3d at 779. "Applicants for intervention bear the burden of proving that they are inadequately represented by a party to the suit." *Michigan*, 424 F.3d 438, 444 (citing *Meyer Goldberg, Inc. v. Goldberg*, 717 F.2d 290, 293 (6th Cir.1983)). This burden is minimal– the proposed intervenor must only show "'that there is a potential for inadequate representation.'" *Id.* (quoting *Grutter*, 188 F.3d at 400). The proposed intervenor "is not required to show that the representation will in fact be inadequate." *Miller*, 103 F.3d at 1247. When the proposed intervenor shares "the same ultimate objective as a party to the suit," however, it "must overcome the presumption of adequate representation." *Michigan*, 424 F.3d at 443-44 (citing *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir.1987)).

DB argues that it is not adequately represented because "as the developer and owner of the software at issue, [it] has interests at stake that are different and broader than those of the

current defendants, and would suffer harms that are different in kind and greater in degree if Invesco's request for injunctive relief were to be granted." DB asserts that Defendants are not capable of making all of the same arguments that DB would make in opposition to the relief sought by Plaintiff. Specifically, DB states that Defendants have no knowledge of various aspects of DB's business beyond Louisville, or before Defendants were hired. Plaintiff argues that Defendants have the same objective as DB, and that DB is already financing, coordinating and directing the defense of the Defendants. Plaintiff states that DB has not actually taken any position that is different from that of defendants.

The Court finds that DB has satisfied the minimal burden of proving the potential for inadequate representation if it were not permitted to intervene. The Defendants cannot represent DB's interests in response to the motion for preliminary injunction, and while both Defendants and DB wish to defeat the motion, their interests do not align entirely. Therefore, it is possible that DB may not be adequately represented.

Because DB has proven that its motion to intervene is timely, that it has a substantial legal interest in the subject matter of the case, that impairment of its substantial legal interest is possible if intervention is denied, and that there is a potential for inadequate representation, its motion to intervene is granted. The Court will consider both DB's and GP Defendants' arguments that DB is an indispensable party.

14

B.      *GP DEFENDANTS' AND DB'S MOTIONS TO DISMISS PURSUANT TO RULE 19*

STANDARD

Federal Rule of Civil Procedure 19 "establishes guidelines for determining when it is proper to dismiss a case because a person or entity has an interest in the outcome of the litigation that could be impaired in the absence of that person or entity, but joinder of the person or entity will deprive the court of subject matter jurisdiction." *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 664 (6th Cir. 2004). Rule 19 should be applied pragmatically because "the essence" of the rule "is to balance the rights of all those whose interests are involved in the action." *Id.* at 665 (citation and internal quotations omitted).

"Assessing whether joinder is proper under Rule 19 is a three-step process. First, the court must determine whether the person or entity is a necessary party under Rule 19(a)." *Id.* at 666 (internal citations omitted). Rule 19(a) provides:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). "Second, if the person or entity is a necessary party, the court must then decide if joinder of that person or entity will deprive the court of subject matter jurisdiction." *Glancy*, 373 F.3d at 666 (citations omitted). "Third, if joinder is not feasible because it will

15

eliminate the court's ability to hear the case, the court must analyze the Rule 19(b) factors to

determine whether the court should 'in equity and good conscience' dismiss the case because the

absentee is indispensable." *Id.* (quoting Fed. R. Civ. P. 19(b)).  The Rule 19(b) factors include:

> (1) the extent to which a judgment rendered in the person's absence
>         might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided
>         by:
>         (A) protective provisions in the judgment;
>         (B) shaping the relief; or
>         (C) other measures;
> (3) whether a judgment rendered in the person's absence would be
>         adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action
>         were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

"Thus, a person or entity 'is only indispensable, within the meaning of Rule 19, if (1) it is

necessary, (2) its joinder cannot be effected, and (3) the court determines that it will dismiss the

pending case rather than proceed in the case without the absentee.'" *Glancy*, 373 F.3d at 666

(citation omitted).

## DISCUSSION

*1.     Burden*

The GP Defendants state that the burden rests on Plaintiff to prove that DB is not

indispensable.  In support of this position, they cite *Boles v. Greenville Housing Authority*, a case

in which the Sixth Circuit stated that "[w]here an initial appraisal of the facts reveals the

possibility that an unjoined party is arguably indispensable, the burden devolves upon the party

whose interests are adverse to the unjoined party to negate the unjoined party's indispensability

to the satisfaction of the court."  468 F.2d 476, 478 (6th Cir. 1972); *see also N.L.R.B. v. Doug*

16

*Neal Mgt. Co.*, 620 F.2d 1133, 1138 (6th Cir. 1980) (quoting *Boles*).  Plaintiff argues that the burden rests on the GP Defendants and DB "to show that the person or entity who was not joined is needed for a just adjudication," citing Wright & Miller's *Federal Practice and Procedure*.  7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1609 (3d. Ed. 2001).

These arguments do not contradict each other.  According to Sixth Circuit precedent, the burden of showing that DB is an indispensable party initially rests on GP Defendants and DB.  If they present facts that reveal that DB is arguably indispensable, then the burden shifts to Plaintiff to prove that DB is not an indispensable party.

2.      *DB is a Necessary Party*

a.      *Rule 19(a)(1)(A)*

GP Defendants argue that DB is a necessary party because in its absence, the Court cannot accord complete relief among existing parties.  *See* Fed. R. Civ. P. 19(a)(1)(A).  They state that Plaintiff cannot be awarded complete relief by only enjoining them.  Without DB, they argue, relief is incomplete.

In its preliminary injunction motion, Plaintiff seeks to prohibit Defendants from developing, using or deploying certain software programs and from disclosing, implementing or using Plaintiff's investment process insofar as it is facilitated and carried out by Plaintiff's proprietary Q-Tech system.  The GP Defendants argue that a preliminary injunction cannot be narrowed only to apply to them and still grant effective relief to correct a theft of trade secrets. If DB is not a party, they contend that it may continue to use its own systems and processes because a judgment has no effect on a non-party.

17

The case cited by the GP Defendants that lends the greatest support to their position is *Keweenaw Bay Indian Community v. Michigan*, 11 F.3d 1341 (6th Cir. 1993). In *Keweenaw*, the plaintiff was an Indian Community which, along with the Red Cliff Band of Chippewa Indians and the Bad River Band of Chippewa Indians, was a successor in interest to bands of Lake Superior Chippewa, who signed a treaty with the United States in 1842. 11 F.3d at 1344. The Community brought suit against three groups of defendants, contending that it had exclusive right to certain waters and that others must obtain its consent to fish in them. *Id.* One group consisted of the state of Michigan and certain state officials, the second consisted of individual members of the Red Cliff Band, and the third consisted of individual members of the Bad River Band. *Id.* The Community did not sue the Red Cliff or Bad River Bands themselves. *Id.*

The individual members of the Red Cliff and Bad River Bands filed a motion to dismiss for failure to join indispensable parties, the Red Cliff and Bad River Bands. *Id.* The district court found that the Bands were necessary parties under the first prong of Rule 19 because "any relief granted to the Community or Michigan in this action would be hollow, as the absent bands also had an interest in fishing rights under the treaty and could continue to fish in the Michigan waters because the judgment in this dispute would have no effect on them." *Id.* at 1345. Similarly, here any injunction against Defendants would not prohibit DB from developing, using or deploying the software programs at issue or implementing or using Plaintiff's investment process as it is facilitated and carried out by the Q-Tech system.

Affirming the district court's decision, the Sixth Circuit did not directly address the district court's reasoning that any relief granted would be hollow, instead it focused on the fact that the absent bands were signatories to the treaty at issue in the action. *Id.* at 1346-47. Here,

18

the GP Defendants cannot argue that DB is necessary because it is a party to any contract at issue. *See generally Case v. Int'l Bhd. Of Elec. Workers*, 438 F. Supp. 856, 589 (D. Alaska 1977). Still, logic supports the GP Defendants assertion that it would not make sense to enjoin Defendants but not enjoin DB.

Plaintiff argues that the Court can grant complete relief among the existing parties, just as it did in the first preliminary injunction. The first preliminary injunction, however, was different than the pending preliminary injunction. The first preliminary injunction prohibited the GP Defendants, for a limited period of time, from leaving the employ of Plaintiff, from generally disclosing or using any of INVESCO's trade secret and/or confidential information, from soliciting or hiring any INVESCO employees, and from soliciting certain business relationships. The pending motion for preliminary injunction requests that Defendants, who are now working for DB, be enjoined from developing, using or deploying specific software that is in use by DB or implementing or using Plaintiff's investment process as DB is allegedly doing. This pending motion potentially involves DB's actions to a much greater extent than the first preliminary injunction did.

Plaintiff also contends that it has no obligation to seek injunctive relief against all potential parties. Plaintiff is correct that DB's status as a potential joint tortfeasor does not make it a necessary party. *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 204 (6th Cir. 2001). In response to the argument that any injunction against only Defendants would be hollow, Plaintiff argues that the scope and efficacy of any injunctive relief granted by the Court is not an issue that can be adjudicated on these motions.

The Court agrees with GP Defendants that any injunctive relief that the Court may issue

19

against them without DB may be dissatisfactory to Plaintiff because DB would not be bound by the injunction. That, however, is the risk that Plaintiff may choose to take by not suing DB. DB is not a party to a contract or treaty at issue, nor must it consent to any injunction issued against the Defendants. *See Case*, 438 F. Supp. at 589; *Keweenaw*, 11 F.3d at 1346-47; *Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1124 (2d Cir. 1990). The Court can theoretically enjoin Defendants without DB being a party to the action. The extent of that injunction could possibly be limited, but it would be complete relief between Plaintiff and Defendants. Therefore, the Court finds that DB is not a necessary party under Rule 19(a)(1)(A).

    *b.*    *Rule 19(a)(1)(B)*

  DB asserts that it is a necessary party pursuant to Rule 19(a)(1)(B)(i) because it has interests relating to the subject matter of the action and its ability to protect those interests may be impaired if the action is determined in its absence. Specifically, DB states that it has significant interests in not allowing Plaintiff to obtain relief which affects software it developed and owns and investment processes it may use; and which would restrict the ability of DB employees to use DB's software and create uncertainty regarding their use of investment processes in their work for DB clients. Plaintiff states that DB cannot have an interest relating to the subject of the action because it has been aware of the proceedings and has not claimed an interest until now. This argument, however, goes to the timeliness of the intervention, not whether DB has an interest. Plaintiff's argument that DB is adequately represented by the current Defendants is also inapposite.

  The Court finds that DB does have an interest relating to the subject of the action. Not only are all Defendants current employees of DB, but the pending preliminary injunction

specifically requests relief that would significantly impede their job functions and likely the functioning of DB's business to some extent.  Disposing of this action in DB's absence may impair or impede DB's ability to protect its interest in objecting to the preliminary injunction because the current Defendants cannot make arguments on behalf of DB or represent all of its interests.  Therefore, the Court finds that DB is a necessary party under Rule 19(a)(1)(B)(i).[3]

### 3.    Joinder of DB Destroys the Court's Subject Matter Jurisdiction

The next step in the Rule 19 analysis is determining whether joinder of DB will deprive the Court of subject matter jurisdiction.  *Glancy*, 373 F.3d at 666.  Plaintiff and DB agree that because they are both incorporated in the State of Delaware, joinder of DB will deprive the Court of its subject matter jurisdiction.

### 4.    DB is an Indispensable Party

Because joinder of DB is not feasible, the Court "must analyze the Rule 19(b) factors to determine whether the court should 'in equity and good conscience' dismiss the case" because DB is indispensable.  *Glancy*, 373 F.3d at 666 (quoting Fed. R. Civ. P. 19(b)).  The first factor the Rule directs the Court to consider is the extent to which a judgment rendered in DB's absence might prejudice it.  DB argues that it would be extremely prejudiced if the Court prohibited the Defendants' use or further development of its Alpha Workbench software.

---

[3] DB also argues that Rule 19(a)(1)(B)(ii) applies because Defendants would be subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the parallel litigation pending in New York concerning these same issues.  This is not a proper interpretation of 19(a)(1)(B)(ii).  For that subsection of the Rule to apply, DB would have to argue, for example, that Defendants would be subject to a substantial risk of incurring inconsistent obligations because of DB's interest in not allowing Plaintiff to obtain relief which affects software it developed and owns and investment processes it may use.  This makes no sense in the context of this case.

Plaintiff states that this argument is pure speculation, and because DB is a "huge global corporation" it "will not come to a grinding halt because of an injunction, even if there are some users of Alpha Workbench beyond Louisville." Plaintiff argues that DB will only be hindered if the Court determines that the software was misappropriated. Plaintiff also notes that DB "has no legitimate interest in using an unlawfully obtained and developed product." Finally, Plaintiff argues that DB has software that performs the same functionality as Alpha Workbench, neutralizing any potential prejudice.

Plaintiff's arguments imply that an injunction would prejudice DB, but that DB would not be overly prejudiced because it is a huge corporation and can handle the potential enjoinment. These arguments are troubling. They, in fact, lend support to DB's argument that it should be allowed to defend itself against any potential injunction or rulings that its Alpha Workbench software was misappropriated. Plaintiff's argument that DB will only be hindered if the Court determines that the software was misappropriated admits that DB will be hindered if the Court rules in Plaintiff's favor. For this reason, DB should be permitted to defend its interests.

Second, the Court must also consider the extent to which any prejudice could be lessened or avoided. *See Hooper v. Wolfe*, 396 F.3d 744, 750 (6th Cir. 2005). Plaintiff states that the Court can fashion relief to protect DB, but does not specify how. DB states that it sees no way to shape the relief Plaintiff is seeking to avoid an impact on DB's ability to develop and use its software.

The relief requested would impact DB. At this time the Court does not believe it could fashion a remedy that would grant Plaintiff's request for relief without significantly affecting

DB.

The third factor asks whether a judgment rendered in DB's absence would be adequate. DB argues that it would not, because the judgment would not be binding on it. Plaintiff responds that Rule 19 does not impose a requirement that a single injunction be obtained against all wrongdoers in one action. In support, Plaintiff cites *General Transistor Corporation v. Prawdzik*, 21 F.R.D. 1 (S.D.N.Y. 1957). In *General Transistor*, the plaintiff sought to enjoin a former employee from disclosing trade secrets to his current employer. 21 F.R.D. at 1. The plaintiff did not join the current employee in the action. *Id.* The court held that the plaintiff was within its rights to deliberately omit the current employer to save diversity jurisdiction, and that the current employer was not an indispensable party. *Id.* As DB notes, however, here Plaintiff is seeking more than just an injunction prohibiting Defendants from disclosing trade secrets. Here, Plaintiff seeks an injunction prohibiting the use and development of software currently being used by DB.

This analysis is similar to the Rule 19(a)(1)(A) question of whether the Court can accord complete relief among existing parties, but not identical. The pertinent question for Rule 19(b)(3) is whether relief without DB would be adequate. An injunction that does not have the effect of limiting DB from using misappropriated trade secrets would be inadequate. Without DB represented the Court believes it would be difficult to fully determine the issue of misappropriation.

The final Rule 19(b) factor the Court must consider is whether Plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. DB asserts that Plaintiff could pursue relief against DB in the New York action, amend the New York action to add Defendants,

23

or bring an action against DB in Kentucky state court.  DB states that personal jurisdiction over all of the Defendants would exist in New York because they have purposefully availed themselves of the privilege of doing business in New York.  Plaintiff argues that neither a New York nor a Kentucky state court would offer it an adequate remedy because this is the only court that can enforce the June 27, 2007 order, and because it would have to essentially have to start over.  Plaintiff questions whether the New York court would have personal jurisdiction over the Defendants, but admits that a Kentucky state court would likely have jurisdiction over Defendants and DB.  Plaintiff argues that it would be prejudiced by having to commence a new action.

This factor, however, does not require the Court to consider whether Plaintiff would be prejudiced by having to start over, it require the Court to consider whether Plaintiff would have an adequate remedy if the action were dismissed.  Because Plaintiff could continue in New York state court or commence a new action in Kentucky state court, it has an adequate remedy upon dismissal.  Plaintiff's argument that this Court is the only court that can enforce the June 27 order is unpersuasive because that order has expired and Plaintiff has not alleged that it was violated.

Finally, the Court "must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b).  The Court cannot in good conscience allow the action to proceed without DB.  The relief Plaintiff seeks implicates DB in such a way to make it an indispensable party.  DB's ability to protect its interest relating to the subject matter of the action may be impaired or impeded if it is not joined. The Court is reluctant to make the finding, but feels that it must.  The best and most fair

24

resolution of this matter is one suit with all parties before the court.  Because the Court finds that DB is necessary, that its joinder cannot be effected, and that the Rule 19(b) factors weigh in favor of dismissal, DB is an indispensable party.  Therefore, this case must be dismissed.


CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants Pass, Johnson, Guenther and Bowling's Motion to Dismiss is DENIED and DB's Motion to Dismiss is GRANTED.  An appropriate order shall issue.

25